


U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 27, 2015**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ADKINS SUPPLY, INC., | § | Case No.: 11-10353-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| KENT RIES, Trustee for the Estate of Adkins Supply, Inc., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 14-01000 |
| v. | § | |
| | § | |
| MARY L. ARDINGER, Individually and as Executrix of the ESTATE OF HORACE T. ARDINGER, JR., | § | Civil Action No. 1:14-CV-095-C |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION**

Defendants, Mary L. Ardinger, Individually and as Executrix of the Estate of Horace T. Ardinger, Jr.; HTA Minerals, LLC; and H.T. Ardinger & Son, Co., request an *intra-district* transfer of the venue of this suit from the Abilene Division to the Dallas Division of the Northern District of Texas, under 28 U.S.C. § 1404(a).[1] In the alternative, Defendants seek a traditional transfer of venue to the Eastern District of Texas, Tyler Division. The plaintiff, Kent Ries, Trustee for the Estate of Adkins Supply, Inc., opposes the request.

**I.**

As part of the venue provisions that specifically apply to bankruptcy cases and proceedings (28 U.S.C. §§ 1408–1412), § 1412 addresses a change of venue; it references *inter-district* transfers and does not mention intra-district transfers. Section 1404(a) is part of the general civil transfer provisions, *see* 28 U.S.C. §§ 1390–1407; it addresses both inter-district and intra-district transfers. Defendants contend that their requested venue change should be determined under § 1404(a), because the causes of action here are not exclusively "core" bankruptcy matters.[2] On December 11, 2014, the Court held in its Report and Recommendation to the District Court that this adversary proceeding involves both core and non-core causes.[3]

---

[1] HTA Minerals, LLC and H.T. Ardinger & Son, Co. were dismissed as party defendants by the Trustee's First Amended Complaint.

[2] The concept of a "core" bankruptcy matter is derived from the jurisdictional framework. District courts have jurisdiction of bankruptcy "cases" and "proceedings." A "case" is the title 11 case initiated by the debtor's petition in bankruptcy; "proceedings" are the matters in dispute that arise in a bankruptcy case, including lawsuits, labeled "adversary proceedings," and contested matters, which are those disputes that typically arise by motion. The statute provides that district courts have jurisdiction of bankruptcy cases and all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. The arising matters are identified as "core" matters; the "related to" matters are said to be non-core. Each district court in the country has by local order, as authorized by 28 U.S.C. § 157(a), referred all cases and proceedings to the bankruptcy judges in their respective districts.

[3] Upon the Defendants' request for withdrawal of the reference, the Court issued its Report and Recommendation to the District Court. On January 7, 2015, the District Court issued its order adopting the recommendation of this Court and ordered that the reference be withdrawn for jury trial before the District Court, with this Court retaining all pretrial matters pending certification that the suit is ready for trial.

**A.**

Section 1408 of title 28 addresses the venue of bankruptcy cases; § 1409(a) addresses the venue of *proceedings*, stating that "a proceeding *arising under* title 11 or *arising in* or *related to* a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a) (emphasis added). Accordingly, an adversary proceeding like the one here may be commenced in the district court where the bankruptcy case is pending. That the suit here is filed in a proper venue is not disputed.

Section 1412 provides that a "district court may transfer a *case or proceeding under title 11* to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). Section 1404(a) is slightly different, stating that "[f]or the convenience of parties *and witnesses*, in the interest of justice, a district court may transfer *any civil action* to any other district *or division* where it might have been brought . . . ." 28 U.S.C. § 1404(a) (emphasis added).

Section 1404(a) obviously provides for intra-district transfers, as well as consideration of witnesses. As Defendants note, it also refers to "any civil action" whereas § 1412 applies to a "case or proceeding *under* title 11." *See* §§ 1404(a), 1412 (emphasis added).

The courts are split on which statute controls the venue-transfer of a "related to" proceeding. Defendants submit, and correctly so, that many courts have held that § 1404(a), rather than § 1412, is the applicable venue-transfer statute for a "related to" proceeding. *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 97–98 (Bankr. S.D. Tex. 2009); *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, No. Civ.H-03-4973, 2004 WL 2278770, *14 (S.D. Tex. Sept. 14, 2004); *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, No. 301CV2282-L, 2003 WL 298799, *2–3 (N.D. Tex. Feb. 10, 2003); *Searcy v.*

*Knostman*, 155 B.R. 699, 706–07 (S.D. Miss. 1993). They failed to point out, however, that many other courts have taken the opposite view—that a venue-transfer of a "related to" proceeding is controlled by § 1412. *Mendoza v. General Motors, LLC*, No. CV 10-2683, 2010 WL 5224136, *4 (C.D. Cal. 2010); *Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 627–29 (D. Minn. 2009); *Marquette Transp. Co. v. Trinity Marine Products, Inc.*, No. 06-0826, 2006 WL 2349461, *4 (E.D. La. Aug. 11, 2006); *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 677–80 (S.D. W. Va. 2005); *A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 322–23 (N.D. Ala. 1998).

The courts that employ § 1404 for the possible transfer of "related to" (non-core) proceedings look, they say, to the plain language of § 1412. Referring to a "case or proceeding *under* title 11" implies that § 1412 applies exclusively to core proceedings. *See, e.g.*, *Longhorn Partners*, 408 B.R. at 97; *AEP Energy*, 2004 WL 2278770, at *14; *Moto Photo*, 2003 WL 298799, at *2. This position is arguably supported by the predecessor statute to § 1412. *See, e.g.*, *Longhorn Partners*, 408 B.R. at 97–98; *Searcy*, 155 B.R. at 707. The predecessor statute, § 1475, stated that "[a] bankruptcy court may transfer a case under title 11 or a proceeding arising under or *related to* such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties." 28 U.S.C. § 1475 (1978) (repealed 1984) (emphasis added). The courts reason that since § 1412 does not mention "related-to" proceedings, it concerns only "arising-under" proceedings. *See, e.g.*, *Searcy*, 155 B.R. at 707; *Moto Photo*, 2003 WL 298799, at *2. These courts attribute this omission as expressing Congress' intent to "follow the pronouncements of the United States Supreme Court in the [*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 480 U.S. 50 (1982)] case [and thus]

to limit the authority of an Article I bankruptcy court." *Searcy*, 155 B.R. at 707 (citing *Murray v. Jersey Boats, Inc.*, No. 91-7733, 1992 WL 37516, *3 (E.D. Pa. Feb. 21, 1992)).

The opposing view is best explained in *Dunlap v. Friedman's, Inc*. *See Dunlap*, 331 B.R. at 677–80. The *Dunlap* court held that § 1412 is the appropriate statute for the venue-transfer of a "related to" proceeding. *Id.* at 680. In so doing, the *Dunlap* court addressed the reasoning provided by courts that favor § 1404(a). *Id.* The *Dunlap* court provided the context for the now-repealed § 1475 as part of the Act to Establish a Uniform Law on the Subject of Bankruptcies, a body of law that was repealed six years after its induction.[4] The court defied the argument that the omission of "related to" in the successor statute, § 1412, was only due to an effort by Congress to comply with *Marathon*. *Id.* at 679. The court stressed that this view

> overlooks the fact that section 1475, in addition to explicitly allowing transfer of "related-to" proceedings, also treated the bankruptcy court as the transferor. Section 1412, on the other hand, switched transfer authority to the district court alone. If Congress was of a mind to comply with *Marathon*, this single step was sufficient.

*Id.* The court then analyzed § 1412 within the context of the other proximate venue provisions:

> Title 28 U.S.C. § 1409 is entitled "[v]enue of *proceedings* arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1409 (emphasis added). Section 1409 was enacted along with section 1412 as a part of Public Law 98–353. Indeed, one looking in the Statutes at Large will note the provisions are separated

---

[4] The *Dunlap* court referred to "the principal commentator" (*Collier on Bankruptcy*) for a summary of the life span of § 1475:

> The jurisdictional provisions of the 1978 legislation were contained in sections 1471–1482 of title 28, United States Code, all of which were repealed by the 1984 legislation. Congress granted to the district courts "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all proceedings arising under title 11 or arising in or related to cases under title 11." These provisions are repeated verbatim in present 28 U.S.C. § 1334(a) and (b).
> . . .
> Thus, all of the jurisdiction given to the Article III district court was to be exercised by the non-Article III bankruptcy court. The risk was taken that this flow-through jurisdiction would not pass constitutional muster. It was recognized, however, that a constitutional attack was likely and, shortly after enactment, it came.

*Dunlap*, 331 B.R. at 678 (quoting 1 *Collier on Bankruptcy* ¶ 3.01(2)(b) & (2)(b)(I) (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005)).

> by just three inches of statutory text relating, in part, to venue. Subdivision (a) provides as follows:
>
> > (a) Except as otherwise provided in subsections (b) and (d), a *proceeding* arising under title 11 or arising in or *related to a case under title 11* may be commenced in the district court in which such case is pending.
>
> 28 U.S.C. § 1409(a). The word "proceeding" plainly modifies all of the phrase "arising under title 11 or arising in or related to a case under title 11 . . . ." Because section 1409(a) uses the term "proceeding" to include an action "related to a case under title 11[,]" it lends strong credence to the notion that the word "proceeding[,]" as used in section 1412, should be accorded the same breadth. If not, one is left to speculate what the term "proceeding" actually means in section 1412.

*Id.* at 679–80 (footnote omitted) (emphasis in original).

The other argument offered by the *Dunlap* court for the applicability of § 1412 rests on Rule 7087 of the Federal Rules of Bankruptcy Procedure. Rule 7087 "deals with removed adversary proceedings, [and] explicitly references § 1412 rather than § 1404(a)."[5] *Id.* at 677–78 (quoting *City of Liberal, KS v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004)).

The reasoning of *Dunlap* is persuasive. *Dunlap* resolves the ambiguity implicit in § 1412 by construing its reference to "proceeding under title 11" to mean, as it does at § 1409, "proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* at 679. It therefore incorporates any type of proceeding that can arise in a bankruptcy case so long as such proceeding is, at least, "related to" the bankruptcy case. Then there is Rule 7087, which provides that "the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412 . . . ." Fed. R. Bankr. P. 7087. That the rule makes no mention of § 1404 lends some support to the argument that § 1412 is the appropriate venue statute for

---

[5] The Federal Rules of Bankruptcy Procedure "govern procedure in cases under Title 11 of the United States Code." Fed. R. Bankr. P. 1001. Rule 7087 states, "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)." Fed. R. Bankr. P. 7087.

"related to" proceedings. And most important, although §§ 1404(a) and 1412 are similar, § 1412 is tailored to bankruptcy cases and proceedings; it grants deference for the "home court" rule—venue where the bankruptcy case is pending—and considers the preservation of the estate as an important interest; an analysis from § 1404(a) ignores the bankruptcy. *Compare Bruno's*, 227 B.R. at 326–31 (considering economics of estate administration, presumption of the home court, and plaintiff's original choice of forum), *with In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) (a non-bankruptcy-related case).

**B.**

The Court recognizes that there is no explicit authority in § 1412 for intra-district transfers of adversary proceedings. Rule 7087, likewise, just refers to transfers to another "district." *See* 28 U.S.C. § 1412; Fed. R. Bankr. P. 7087. In the absence of direction from the statute regarding intra-district transfers, courts have turned to their respective local rules. *See In re West*, No. 12-60951, 2012 WL 1252984, *1 (Bankr. N.D. Ohio Apr. 13, 2012) (in absence of guidance for intra-district reassignment of the case, the court looked to the reassignment section of its local bankruptcy rules); *In re Stolicker Dairy Farms*, 67 B.R. 459, 461 (Bankr. E.D. Mich. 1986) (because the bankruptcy rules did not provide for intra-district transfer of a bankruptcy case, the court was guided by its local rules).

Unfortunately, here, neither the District Court Local Rules nor the Bankruptcy Court Local Rules addresses intra-district transfers. A court faced with a similar situation held that §§ 1404(a) and 1412 are not mutually exclusive and then applied § 1404(a) to determine an intra-district venue transfer. *In re Perry*, No. 02-13366, 2002 WL 31160132, *4 (Bankr. W.D. Tenn. Sept. 26, 2002) (creditor filed a motion to change venue of case to another division within the same district). The simple solution is to use § 1404(a), but that would ignore both Rule 7087 and

the venue bias of § 1409, and bypass the analysis that comes with § 1412, which is tailored to consider bankruptcy-related interests.

**II.**

**A.**

The venue of "civil actions" filed in federal court is based on where a defendant resides or where the facts giving rise to the claim arose. *See* 28 U.S.C. § 1391. As stated, the venue for lawsuits filed in connection with a bankruptcy case, termed adversary proceedings, is where the debtor's bankruptcy case is filed. *See* 28 U.S.C. § 1409. Venue for bankruptcy-related lawsuits is therefore fundamentally different from venue for traditional federal court actions. Defendants here request an intra-district transfer of venue or, in the alternative, an inter-district transfer of venue. They want this lawsuit filed nearer to where they reside. As should be obvious, this turns the basic venue bias for bankruptcy-related adversary proceedings on its head. It becomes more akin to the venue bias for civil actions generally. Given the nature of the request here, the Court finds no distinction between the requested intra-district or inter-district transfer; a transfer under either satisfies the Defendants. The Court also discerns no reason to necessarily choose one venue provision, § 1404 or § 1412, over the other.

**B.**

The Fifth Circuit in *In re Radmax, Ltd.*, a non-bankruptcy-related case, considered an intra-division motion to transfer venue under § 1404(a). *Radmax*, 720 F.3d 285. To reiterate, § 1404(a) allows a venue change for the convenience of parties and witnesses and in the interest of justice. The court in *Radmax* held that for such a transfer to be granted, the movant must demonstrate that the "transferee venue is clearly more convenient" and that consideration of the following factors favors transfer:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Radmax*, 720 F.3d at 288 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).

Section 1412 permits the transfer of an adversary proceeding under title 11 to a district court in another district if it is (1) in the interest of justice or (2) for the convenience of the parties. *In re Enron Corp*., 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002). Although satisfaction of either principle is sufficient to support a transfer, "the decision of whether to transfer venue is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness." *Id.* at 342 (citations omitted). The movant bears the burden of showing, by a preponderance of the evidence, that the transfer is warranted. *In re Think3, Inc.*, No. 11-11252, 2015 WL 65221, *48 (Bankr. W.D. Tex. Jan. 5, 2015) (citing *In re Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1241 (5th Cir. 1979) *cert. denied*, 444 U.S. 1045 (1980); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390 (2d. Cir. 1990); *Zazzali v. 1031 Exchange Grp. (In re DBSI, Inc.)*, 478 B.R. 192, 194 (Bankr. D. Del. 2012)); *see also Enron*, 274 B.R. at 342 (citations omitted).

Notwithstanding some deference to the "home court" choice, if consideration of the "interest of justice" or the "convenience of parties" warrants it, the court should transfer a case. The factors set forth in *Think3* are representative of what courts have examined in a § 1412 transfer. In examining the "interest of justice factor," courts typically consider:

> (a) [e]fficiency and economics of estate administration; (b) [p]resumption in favor of the "home court"; (c) [j]udicial economy and efficiency; (d) [f]airness and the

> ability to receive a fair trial; (e) [t]he state's interest in having local controversies decided within its borders; and (f) [p]laintiff's original choice of forum.

*Think3*, 2015 WL 65221, at *48–49 (citing *In re BDRC Lofts, Ltd.*, No. 12-11559, 2013 WL 395129, *2 (Bankr. W.D. Tex. Jan. 31, 2013); *Bruno's*, 227 B.R. at 324–25)); *see also TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001) (citations omitted). In assessing what is convenient for the parties, courts often examine:

> (a) location and proximity of the parties; (b) ease of access to necessary proof; (c) convenience of witnesses, including their location and proximity; (d) location of the assets, including books and records; (e) availability of subpoena power for the unwilling witness; and (f) expenses related to obtaining witnesses.

*Think3*, 2015 WL 65221, at *50 (citing *BDRC Lofts*, 2013 WL 395129, at *2; *In re Moss*, 249 B.R. 411, 425 (Bankr. N.D. Tex. 2000); *Bruno's*, 227 B.R. at 325)); *see also TIG Ins.*, 264 B.R. at 668.

**III.**

In considering the text of the two statutes, the two considerations—the convenience of parties (and witnesses) and the interest of justice—are stated in the conjunctive under § 1404 but in the disjunctive under § 1412. This implies that § 1412 might be more generous to the moving party. In addition, it is clear that there is much overlap between the lists of court-created factors that inform the statutory considerations. The factors for § 1412, however, do account for the interests of the bankruptcy estate. Section 1404 obviously does not as it applies to federal civil actions, generally.

The factors to be considered for the interest of justice under § 1412 clearly favor the Trustee's choice of forum, either explicitly or by application. The bankruptcy case of *Adkins Supply, Inc.* was filed in the proper venue; no argument is made that its filing was a product of

forum shopping.[6] Adkins Supply, Inc. is headquartered in Sweetwater, Texas, approximately 40 miles from Abilene, Texas. It is also where, at least in part, the transactions took place that give rise to this action. Filing this adversary proceeding in the so-called "home court" recognizes the bankruptcy-related interests that exist with any adversary proceeding. Such interests are not insignificant here. Adkins Supply, Inc. is one of three related bankruptcy cases that are pending in this Court. The first filing was an involuntary petition against R.L. Adkins Corp. (RLAC) [Case No. 11-10241], filed by creditors of RLAC. Robert Adkins, the principal of both companies, then filed his chapter 7 voluntary petition [Case No. 12-10314] in this Court. These cases were all filed in the Abilene Division where they all reside, where the assets were located, and where, apparently, the creditors preferred they be filed.

The Trustee, Ries, is charged with the obligation of administering the bankruptcy estate that consists of the creditors and the assets that he must reduce to money for payments to be made to creditors in accordance with the Bankruptcy Code. This action is but one asset that he is charged with administering. That the Abilene Division is arguably more convenient for the Trustee than it is for the remaining defendant here, Ardinger, simply reflects the venue bias that exists under § 1409. There is no argument made that Ardinger cannot receive a fair trial before a court that serves the Abilene Division or that a trial in the Dallas Division or in the Eastern District would be inherently more economical and efficient. And there is certainly no issue concerning the application of conflicting or foreign laws. The factors that inform the interest of justice under § 1412 do not favor a transfer of venue.

The convenience factors do not point to Dallas or the Eastern District as "clearly" more convenient forums. A trial in a court closer to where Ardinger resides means it is also less

[6] The leading treatise on bankruptcy law, *Collier on Bankruptcy*, laments the blatant forum shopping that goes on with the filing of bankruptcy cases. 1 *Collier* ¶ 4.02[2][b].

convenient for the Trustee, his counsel, and, more important, for representatives of the debtor, Adkins Supply, Inc. The same holds true for witnesses. The location of other evidence—documentary evidence—is insignificant. According to the pleadings, this suit is based on an arrangement that existed between the debtor and Horace Ardinger that was carried out through a series of fund transfers—back and forth between them—that are evidenced by wire transfers and entries in bank accounts. This type of information is no doubt maintained in an electronic format. The Court assumes that both sides have some documentation in their possession that is relevant to the issues raised here.

Both parties questioned the availability of subpoena power for unwilling witnesses, and, particularly, for witnesses outside a 100-mile radius of the court, whether Abilene, Dallas, or the Eastern District. Under Federal Rule of Bankruptcy Procedure 9016, the Court has power to compel non-party individuals to attend a trial within 100 miles from where the person resides, is employed, or regularly transacts business.[7] Furthermore, a witness can be compelled to attend trial in the state of her residence so long as she does not incur substantial expense. The limit on the Court's subpoena power is that the Court cannot compel an unwilling, non-officer, non-party

---

[7] Federal Rule of Civil Procedure 45(c), applicable to bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 9016, states

> (1) For a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> > (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person, or
> >
> > (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
> >
> > > (i) is a party or a party's officer; or
> > >
> > > (ii) is commanded to attend a trial and would not incur substantial expense.
>
> (2) For Other Discovery. A subpoena may command:
>
> > (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
> >
> > (B) inspection of premises at the premises to be inspected.

witness to attend trial unless the witness would not incur substantial expense. But both parties potentially have these types of witnesses.

The "convenience" considerations are in essence a zero-sum game. What is more convenient for one side is less convenient for the other. The statutes refer to the convenience of parties and witnesses, without favor to either side. Any perceived additional inconvenience borne by Ardinger is not sufficient to justify a transfer of venue.

The remaining factor addressed by the Defendants concerns the familiarity of the forum with the law that will govern the case, the seventh factor listed in *Radmax*. *Radmax*, 720 F.3d at 288. Such consideration potentially implicates the third factor—judicial economy and efficiency—of the interest-of-justice prong of § 1412. Counsel for Ardinger submits, in effect, that Dallas is a better venue because, as he says, "[w]hether good or bad, the Dallas Division simply deals with more RICO cases." *Post-Hearing Brief in Support of Defendants' Motion to Transfer Venue* [Docket No. 34] at 14. He also says that based on his LEXIS search, usury claims are also more common in the Dallas Division. He in fact points out that the only recent case he could find in the Abilene Division that raised either a RICO claim or a usury claim was the same case and, more specifically, it "was this Court's November 15, 2013 opinion denying Plaintiff's and Defendants' previous 9019 settlement agreement" of the various disputes that are the subject of *this* action. *Id*.

The Court's denial of the proposed settlement is telling. Ries, as trustee, and Ardinger proposed a settlement to the Court that was opposed by a major creditor, Badger Rotary Drilling, LLC (Badger). The proposed settlement resolved Ardinger's proof of claim as well as the Trustee's claims back against Ardinger. Badger contended that there was inadequate information, particularly on Ardinger's $4.44 million proof of claim [Case No. 11-10353, Claim

No.45-1], to even justify consideration of the settlement. The Court agreed with Badger and denied approval of the settlement. The Court's opinion recounts the tactics employed by Ardinger, with the assistance of three separate lawyers, to frustrate Badger's simple inquiries about Ardinger's $4.44 million claim. Of Badger's attempted deposition of Robert Widmer, Jr., an attorney that signed the Ardinger claim, the Court stated as follows:

> Mr. Widmer signed the Ardinger proof of claim specifically as attorney-in-fact though he stated at his deposition that he was acting as attorney at law. He then either effectively disavowed knowledge of any underlying facts regarding the claim or, with the aid of two other lawyers, refused to testify regarding *any* facts supporting the legal theories underlying the claim. Yet a third lawyer, Carol Wolfram, actually prepared the proof of claim for Widmer's signature and had it filed with the Court. It should be noted that this is a claim for over $4 million, filed with a federal court and signed under penalty of perjury. Ardinger, through his cadre of lawyers, obstructed Badger's basic inquiries regarding the nature and validity of the $4.44 million claim. Badger is a co-creditor who is faced with the prospect of sharing *with Ardinger* in any dividend that might be paid out of this estate. Ardinger's claim would be disallowed if such tactics were used in response to a claim objection.

*In re Adkins Supply, Inc.*, No. 11-10353, 2013 WL 6048821, *7 (Bankr. N.D. Tex. Nov. 15, 2013). As explained in the Report and Recommendation to the District Court, this suit incorporates the Trustee's objection to Ardinger's proof of claim.[8]

Though counsel charitably concedes that "most, if not all, courts in the Northern District . . . can correctly apply RICO and Texas usury law[,]" he mentions that the test addresses the court's "familiarity with the law that will govern the case" and, as such, favors transfer. Defendants' Post-hearing Brief at 14–15. This point is of little significance. This is a factor within many and addresses two causes of action within the context of multiple other causes of action. Courts typically accord this factor neutral or little weight. *See Eight One Two, LLC v. Purdue Pharma L.P.*, No. 3:13-CV-2981-K, 2014 WL 7740476, *5 (N.D. Tex. May 16, 2014)

---

[8] *See supra* note 3.

(finding such factor neutral in patent case); *Hebert v. Wade*, No. 3:13-CV-00076, 2013 WL 5551037, *5 (S.D. Tex. Oct. 7, 2013) (stating that both Galveston and Houston divisions are "equally capable" of applying Texas tort and contract law); *Radmax*, 720 F.3d at 289. All judges and all prospective jurors in all divisions of the Northern District of Texas can ably and fairly accommodate this suit and the issues it raises.

This action and the underlying bankruptcy case were filed in the proper venue; there is no hint of forum shopping for either. Ardinger, as the sole remaining defendant, is not being asked to travel across the country for a trial; she resides approximately three hours from the chosen venue. The moving defendants have, through their attorneys, been regular and involved participants in many hearings held in the Adkins-related bankruptcy cases; all such hearings have been held in the Lubbock Division as an accommodation to the attorneys and the appointed trustees.[9] The chosen venue has significant contacts with the subject matter of this action and the bankruptcy case and, on balance, creates no major inconvenience to either party.

The requests made by Defendants here are denied. The Court will prepare an order.

### End of Memorandum Opinion ###

[9] This is also an accommodation to the Court as Lubbock is the duty station for the Lubbock, Amarillo, Abilene, and San Angelo Divisions of the Northern District Bankruptcy Court.