

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 26, 2016**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| ADKINS SUPPLY, INC., | § § | Case No.: 11-10353-RLJ-7 |
| Debtor. | § § § | |
| | § | |
| KENT RIES, Trustee for the Estate of Adkins Supply, Inc., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 14-01000 |
| MARY L. ARDINGER, Individually and as Executrix of the ESTATE OF HORACE T. ARDINGER, JR., | § § § § | Civil Action No. 1:14-CV-095-C |
| Defendant. | § § § | |

Page 1

## **MEMORANDUM OPINION AND ORDER**

Before the Court is *Plaintiff's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 101. Kent Ries, Trustee of the Adkins Supply, Inc. bankruptcy estate (Trustee), and plaintiff here, served Interrogatories and Requests for Production of Documents on defendants, Mary Ardinger and the Estate of Horace T. Ardinger, Jr. (of which Mary Ardinger is executrix). After an agreed extension, defendants served Trustee with their answers.[1] Trustee asserts that defendants' answers are insufficient. Objections were lodged to all items save for Mary Ardinger's full name and address. A few interrogatories were responded to, subject to objections, and defendants promised to produce a forthcoming marital property agreement. The answers are otherwise peppered with objections, all of which are improper, Trustee asserts. Many of the interrogatories are answered with the instruction to "See Exhibit 'A'"—but there is no such exhibit attached to the answer. Finally, Trustee also asks the Court to prescribe the *form* of production. He argues that sifting through boxes in a warehouse should be unnecessary for the majority of the documents requested.[2]

Defendants respond that their "discovery objections were not intended to 'jam' the Trustee."[3] They argue that Trustee has failed to follow a prior order of the Court [Dkt. No. 85] that they contend controls the production of documents in this adversary. Defendants also explain that the missing Exhibit A was prepared at the time of responses but simply not converted to a PDF file or attached to the answer. A copy is included with their response to Trustee's motion; it includes the personal information of those with knowledge of relevant facts and potential expert witnesses.

---

[1] *See Plaintiff's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 101 at 6–35.

[2] *See* discussion *infra* Section III.A. regarding the production of documents in accordance with *Agreed Order Regarding Defendants' Motion to Abate,* Dkt. No. 85.

[3] *Defendants' Response to the Trustee's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 108 ¶ 24.

The response supports some of their objections (mostly the tax return privilege) and details various documents they *do* intend to produce.

Hearing was held on the motion on April 13, 2016.

### BACKGROUND

Trustee's complaint includes causes of action for usury, fraud, and fraudulent transfers (under both § 548 of the Bankruptcy Code and § 24 of the Texas Business and Commerce Code); Trustee also objects to the proof of claim filed by Horace Ardinger in the Adkins Supply bankruptcy case. The affirmative causes, as alleged, arise from a series of transactions from 2007 to 2010 between Robert Adkins (acting on behalf of Adkins Supply, Inc. and R.L. Adkins Corp.) and Horace T. Ardinger, Jr. The complaint states that the transactions involved hundreds of wire transfers of funds by Horace Ardinger to Adkins Supply with Adkins Supply, within a few days, "reimbursing" Ardinger the wired amounts with an additional 2 to 3% return on the wired amounts. The aggregate amount of the transfers over the time frame at issue, according to Trustee, exceeded $44 million; and the alleged total paid returns (the 2–3%) exceeded $4.2 million.

Adkins Supply filed for protection under chapter 11 of the Bankruptcy Code on September 16, 2011; the case was converted to chapter 7 on November 27, 2012. Ries was first appointed as trustee during the chapter 11 proceeding and continued on as trustee after conversion to chapter 7. On February 13, 2012, Horace Ardinger filed a proof of claim in the Adkins Supply bankruptcy case of $4,440,000 that is based on numerous theories stemming from Adkins Supply's failure to fully repay its obligations under the fund transfers made by Ardinger. Horace Ardinger died in late December 2012. This adversary proceeding was filed on January 14, 2014.

### DISCUSSION

If a party fails to respond to discovery requests, Rule 37(a) of the Federal Rules of Civil Procedure allows the requesting party to "move for an order compelling an answer." Fed. R. Civ. P.

37(a)(3)(B). For purposes of the motion to compel, any "evasive or incomplete . . . response must be treated as a failure to . . . respond." Fed. R. Civ. P. 37(a)(4). Successful resistance to discovery requires specific, well-supported objections. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B). In response to a motion to compel, that party must "urge and argue in support of his objection to a request, and, if he does not, he waives the objection." *Mckinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No.3:14-cv-2498-B, 2016 WL 98603, at *3 (N.D. Tex. Jan. 8, 2016). Affidavits or other evidentiary proof are typically necessary to substantiate the objection. *Id*. Discovery responses that, without substantial justification, do not abide by the rules of discovery are met with sanctions. Fed. R. Civ. P. 26(g)(3) and 37.

## I.

### Privileges and the State Law Proviso

As a threshold matter, the Court must decide which privilege law to apply: federal or state. Of course, bankruptcy courts generally employ the federal rules of evidence and procedure.[4] Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant."[5] The Federal Rules of Civil Procedure, however, define neither privilege nor relevance; guidance on both is found in the Federal Rules of Evidence. Evidence Rule 501 provides that federal common law or federal statute governs claims of privilege, "[b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The quoted text is commonly referred to as the "state law proviso."

---

[4] Bankruptcy courts apply the federal rules of evidence and procedure through Part VII of the Bankruptcy Rules and Rule 9017.

[5] "Rule" refers to the Federal Rules of Civil Procedure; "Evidence Rule" refers to the Federal Rules of Evidence.

A plain reading of the state law proviso is troublesome in this case, as it is for many adversary proceedings in bankruptcy courts.[6] On its face, the rule appears, for example, to require that the Court apply federal privilege law for the federal fraudulent transfer claim and Texas privilege law for the state fraudulent transfer claim—both on the same evidence. This would be an "impractical" result. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).

The fraudulent transfer claim under § 548 of the Bankruptcy Code and the objection to the Ardinger proof of claim are traditional, core bankruptcy matters. 28 U.S.C. §§ 1334(b) and 157(b)(2). The usury and fraud causes are controlled by state substantive law, as is, obviously, the fraudulent transfer claim brought under the Texas fraudulent transfer statute. The same alleged facts, and thus the anticipated evidence, should be relevant to each of the affirmative causes, whether federal or state. Under such circumstance, application of federal privilege law is proper. *e2 Creditors Trust v. Stephens, Inc. (In re e2 Commc'ns, Inc.)*, No. 05-3542, 2006 WL 6510985, at *2–3 (Bankr. N.D. Tex. June 15, 2006).[7]

---

[6] *See, e.g.,* 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5434 (1st ed. 1980) ("Application of Rule 501 presents difficult problems in bankruptcy because while such proceedings are undoubtedly federal in nature, the bankruptcy court may be required to undertake to determine the validity of state claims."). If this was a simple conflict of typical state and federal procedure or evidence rules, the federal rule would apply. *Passmore v. Baylor Health Care Sys.*, No. 15-10358, 2016 WL 2956963, at *6 (5th Cir. May 19, 2016). If the defendants were raising state law objections with no federal analog, the test from *A.C.L.U. of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981), would apply. *Johnson v. Owens*, 612 F. App'x 707, 719 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 202 (2015).

[7] This question of whether federal or state law privilege applies when there are both state and federal causes is one upon which neither the Supreme Court nor the Fifth Circuit has provided definite guidance. In the case of *Jaffee v. Redmond*, the issue was noted by the Supreme Court but not determinative of the outcome, so the Court "express[ed] no opinion on the matter." 518 U.S. 1, 15 n.15 (1996). The Fifth Circuit has also never answered the question directly, but commented that the legislative history on the issue is "equivocal." *A.C.L.U. of Miss., Inc. v. Finch*, 638 F.2d 1336, 1343 n.13 (5th Cir. Unit A Mar. 1981). Opinions from the lower courts in this circuit are not uniform. In some opinions, the courts' rulings do not reference the state law proviso. *See, e.g., In re Mirant Corp.*, 326 B.R. 646, 650 n.13 (Bankr. N.D. Tex. 2005) (applying state law without discussion); *In re Hunt*, 153 B.R. 445, 450 (Bankr. N.D. Tex. 1992) (applying federal law without discussion). Some courts attempt to segregate the state claims and federal claims. *See Waldron v. Wal-Mart Stores, Inc. (In re Challenge Constr.)*, No. 06-08050, 2008 WL 2150116, at *2 (Bankr. S.D. Tex. May 22, 2008) (ordering plaintiff to file more definite statement setting forth the applicable law for each cause of action). Others apply the federal work-product privilege and state law for the rest. *See Schmidt v. Rodriguez (In re Rodriguez)*, No. 11-07012, 2013 WL 2450925, at *2 (Bankr. S.D. Tex. June 5, 2013) ("The Texas attorney-client privilege and the federal work-product privilege govern these issues.").

In this district, the Northern District, federal privilege law applies to pendent state law claims. *See e2 Creditors Trust*, 2006 WL 6510985, at *2–3 ("[T]he federal law of privilege is paramount even if the evidence is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.") (citing *Blum v. Spectrum Rest.*

## II.

## Answering the Interrogatories and Production Requests

Federal courts are hesitant to exclude relevant evidence based on privilege. *A.C.L.U. of Miss., Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981). "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. . . . The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974). Put simply, the public has a "right to every man's evidence." *United States v. Bryan,* 339 U.S. 323, 331 (1950) (quotation and citation omitted). The exclusion of any relevant evidence must serve "a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234, 80 S. Ct. 1453, 1454 (1960) (Frankfurter, J., dissenting). Assertions of privilege, therefore, are strictly construed, "for they are in derogation of the search for truth." *Denova v. U.S. Dep't of Labor* (*In re Kaiser Aluminum & Chem. Co.*), 214 F.3d 586, 593 (5th Cir. 2000) (quoting *Nixon*, 418 U.S. at 710).

To successfully withhold otherwise discoverable information by claiming privilege, a party must "make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." *Enron Corp. Savs. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 163–64 (S.D. Tex. 2009); Fed. R. Civ. P. 26(b)(5)(A)(ii). This applies to both interrogatories and production requests. Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B).[8]

---

*Group-Emps.*, No. 4:02-cv-92, 2003 WL 367059 (E.D. Tex. Feb. 18, 2003) (citing *Smith v. Smith*, 154 F.R.D. 661 (N.D. Tex. 1994))).

[8] The 2015 amendment to Rule 34 explains that it "adopts" Rule 33's requirement of specificity in objections to interrogatories—"eliminating any doubt that less specific objections might be suitable under Rule 34." Fed. R. Civ. P.

*A.*

*General Objections*

General objections clearly fail the specificity requirement. The Fifth Circuit requires that any party resisting discovery must, for each request, *specifically* support each individual objection. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006). Federal courts are quick to express their disdain for such tactics by waiving all general objections.[9]

Defendants made liberal use of a general objection. For the two sets of interrogatories here, a general objection is used for everything except requests for names and addresses, and for one other question—amounting to 38 times for 42 interrogatories.[10] The "General Objection" is defined, but it includes work product, attorney-client privilege, spousal privilege, trade secret, confidential information, tax return, and time frame objections. The responses to the requests for production are more extreme: 41 of 42 requests are met with the General Objection.[11]

---

34 advisory committee's note to 2015 amendment. Further, any objection must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

[9] *See, e.g., Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1–2 (W.D. La. July 25, 2011) ("General objections such as the ones asserted by Plaintiff are meaningless and constitute a waste of time for opposing counsel and the court. In the face of such objections, it is impossible to know whether information has been withheld and, if so, why. This is particularly true in cases like this where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request. . . . [T]he court deems Plaintiff's general objections waived . . . ."); *Morgenstern v. Fox Television Stations of Phila.*, No. 08-0562, 2010 WL 678113, at *4 (E.D. Pa. Feb. 23, 2010) ("[General objections] fall[] far short of meeting Rule 33's standard that each objection be stated with specificity. By objecting in this general manner, Dougherty requests both plaintiff and the Court to review each of the seven general objections and anticipate which may apply to each interrogatory. The purpose of Rule 33's specificity standard is to avoid exactly this inefficient expenditure of time and resources.").

[10] Dkt. No. 101 at 6–20.

[11] Dkt. No. 101 at 21–35. Moreover, the General Objection to the requests for production includes *another* defined objection: time and place objection.

There is no attempt to demonstrate how or why any one of the stated privileges that are part of the General Objection applies to any specific request. The defendants basically shifted the burden to Trustee and the Court to determine the applicability of any of their objections. This sort of obfuscation and gamesmanship frustrates the purpose of discovery, wastes time and resources, and derogates the search for truth. Each of defendants' General Objections will be overruled.

*B.*

*Work Product and Attorney-Client Privilege Objections*

Defendants assert the work product and attorney client privileges in response to Interrogatory No. 1, which requests the identity of each person that was "interviewed, consulted, or participated in the preparation or formulation" of the answers to interrogatories.[12]

The work product doctrine, found in Rule 26(b)(3), protects "documents and tangible things . . . prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The typical items deserving of such protection are "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). The party asserting the privilege must demonstrate that the requested materials warrant work-product protection. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). There are four prongs in the analysis, the first is that "the materials must be documents or tangible things." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 161–62 (S.D. Tex. 2009). Documents are protected, not the underlying facts. *Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.)*, 693 F.2d 1235, 1240–41 (5th Cir. 1982). The

---

[12] Dkt. No. 101 at 9, 17.

defendants here are attempting to protect underlying facts regarding people involved in the preparation of the responses to interrogatories—not documents, tangible things, or any mental processes of the attorney warranting protection.

The attorney-client privilege is the oldest privilege recognized by the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The burden, again, is on the party invoking the privilege. *Hodges*, 768 F.2d at 721. And the privilege "applies only where necessary to achieve its purpose." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (citation omitted). Accordingly, "the privilege protects only confidential *communications*." *Hodges*, 768 F.2d at 721 (emphasis added); *Upjohn*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). Here, the defendants are not attempting to protect communications, and their request would do nothing to encourage full and frank communication between attorneys and their clients. Defendants' work product and attorney client privilege objections are overruled.

## C.

### *Relevance*

Defendants object to multiple interrogatories on the basis of relevance.[13] Such interrogatories focus primarily on the disposition of assets between Ardinger (and the Ardinger estate) and Mary Ardinger. "Relevance" is not defined in the Rules; courts turn to Evidence Rule 401, which states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." This definition is broadly construed, especially in

---

[13] Dkt. No. 101 at 6–20 (Estate of Horace Ardinger's responses to Interrogatory Nos. 6, 7, 8, 9, 17, 18, 19, 20, and 21; Mary Ardinger's responses to Interrogatory Nos. 7, 8, 17, 18, 19, 20, and 21).

the context of discovery requests, which "should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (emphasis added) (internal citation and quotation omitted). Information sought only fails the relevance test if it is clear that it could have "no possible bearing on the claim." *Id*. The information sought here is relevant to the issue of Mary Ardinger's participation in the allegedly fraudulent and usurious transactions. It is likewise relevant to Trustee's request for exemplary damages. *See Wright v. Weaver*, No. 4:07-cv-369, 2009 WL 5170218, at *4 (E.D. Tex. Dec. 18, 2009) (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003)). Defendants' relevance objections are overruled.

### D.

### *Time Frame and Unduly Burdensome Objections*

Defendants object to multiple interrogatories by asserting that the requested information falls outside a reasonable time frame and is unduly burdensome to provide.[14] The two objections (time frame and unduly burdensome) are related and reflect the proportionality limit on what is relevant and discoverable. The 2015 amendment to Rule 26(b)(1) "restores the proportionality factors to their original place in defining the scope of discovery" but it "does not change the existing responsibilities." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. The Rule provides that any matter is discoverable that is relevant, nonprivileged, and

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[14] Dkt. No. 101 at 6–20 (Estate of Horace Ardinger's responses to Interrogatory Nos. 18, 19, 20, and 21; Mary Ardinger's responses to Interrogatory Nos. 19, 20, and 21).

Fed. R. Civ. P. 26(b)(1). The amended rules add "new text to provide explicit focus" for cases involving "what often is called 'information asymmetry'"—situations in which one party has ready access to "vast amounts of information" and the other party has very little. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "[T]hese circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id.*

The party asserting these objections bears the burden of showing their applicability. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Satisfaction of that burden requires "a specific, detailed showing of how a request is burdensome. A mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (internal citation omitted). This can be accomplished with an "affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (quotation and citation omitted).

Defendants have not met this burden. They make no attempt other than through statements such as, "documents that predate the filing of ASI's bankruptcy by more than four years" are "not relevant and would be unduly burdensome to produce." *Defendants' Response to the Trustee's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 108 ¶ 18. Trustee has not asked for any information pre-dating September of 2007. These objections are overruled.

### E.

#### *Trade Secret/Confidential Information/Tax Return Objection*

Defendants object to multiple requests with the tripartite objection that the requested information is a trade secret, confidential, and/or a tax return.[15] To support the tax return objection,

---

[15] Dkt. No. 101 at 6–35 (Estate of Horace Ardinger's responses to Interrogatory Nos. 7, 8, 17, 18, 19, and 20; Mary Ardinger's responses to Interrogatory Nos. 8, 17, 19, 20, and 21; Estate of Horace Ardinger's response to Request for Production No. 18; Mary Ardinger's response to Request for Production No. 16).

defendants cite Texas law and that of other federal circuits. But in the Fifth Circuit, "[t]ax returns are not privileged." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). Regarding the trade secret and confidential information objections, there is no absolute privilege under either. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003). The Court may, for "good cause," limit its discovery of trade secrets and information that is legally confidential. Fed. R. Civ. P. 26(c)(1). Before doing so, the burden is on the party to demonstrate that the information is indeed a "trade secret and that its disclosure might be harmful." *Cmedia*, 216 F.R.D. at 390–91. Defendants' "conclusory assertion . . . does not come close to the particular and specific demonstration of fact required to satisfy the burden of establishing the need for a protective order." *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-cv-0988-D, 2014 WL 114348, at *2 (N.D. Tex. Jan. 9, 2014). Defendants' trade secret/confidential information/tax return objections are overruled.

## F.

### *Legal Conclusion Objection*

Defendants object to a series of interrogatories regarding Ardinger's characterization of the return on the wire transfers to ASI on the ground that they call for a legal conclusion.[16] "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P. 33(a)(2). The 2007 amendment reworded the rule to make it clear that "[o]pinion and contention interrogatories are used routinely." Fed. R. Civ. P. 33 advisory committee's note to 2007 amendment. Defendants' legal conclusion objections are overruled.

---

[16] Dkt. No. 101 at 11 (Estate of Horace Ardinger's responses to Interrogatory Nos. 13, 14, and 15).

*G.*

*Interrogatory Objection Conclusion*

In sum, not a single interrogatory objection by the defendants is proper.[17] Rule 26(g) requires the signature of at least one attorney of record with each discovery response. Fed. R. Civ. P. 26(g)(1). The effect of the signature is that, by signing, the attorney certifies each objection is "warranted by existing law" or a "nonfrivolous argument for . . . reversing existing law" and "not interposed for any improper purpose, such as to . . . cause unnecessary delay[] or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(i)-(ii). Violation of this rule without "substantial justification" mandates that the court "impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). Defendants have offered no substantial justification for stonewalling Trustee's legitimate attempts at discovery.

## III.

### "Production" of Documents

Trustee also asks the Court to compel defendants to comply with the requests for production. Trustee complains of the *form* of production offered, which involves defendants' counsel opening a storage facility in Lewisville and allowing Trustee to sort through boxes to find the relevant evidence. Trustee calls this an "Easter egg hunt."[18] Defendants argue there is "no obligation imposed upon [them] to round-up and transport all of the documents to a single location for the sole

---

[17] Defendants' responses to the requests for production also included an "Interrogatory Objection," referencing the interrogatories. Dkt. No. 101 at 21–35. None of the objections in the interrogatories are valid; the Interrogatory Objection is likewise overruled. There is also an objection for "lack of personal knowledge." Estate of Horace Ardinger's response to Interrogatory No. 16. Such an objection is more appropriately an answer that the party has no knowledge. The Court will not indulge that reply in a separate legal analysis.

[18] *Plaintiff's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 101 ¶ 7.

convenience of the Trustee."[19] The defendants also point to an Agreed Order from July 17, 2015, as still binding on the parties.[20]

*A.*

*The Agreed Order*

First, as for the Agreed Order,[21] such order was entered in response to defendants' earlier motion to abate, which asked the Court to delay the proceeding so Trustee could give Mary Ardinger proper notice before filing a usury claim, as required by Texas Finance Code § 305.006(b). The Agreed Order allows Trustee "to obtain *limited* discovery" from the defendants' records at the Lewisville office and depose (for a maximum of two hours) Paula Acevedo, Horace Ardinger's former assistant. *Agreed Order Regarding Defendants' Motion to Abate*, Dkt. No. 85 (emphasis added). The Agreed Order then states that following this limited discovery, Trustee will provide defendants' counsel with "written notice stating in reasonable detail the nature and amount of any alleged violations in accordance with" the Texas usury statute. *Id.*

The purpose of the Agreed Order is limited in its scope as it is intended to enable Trustee to draft the requested notice letter. The context surrounding the order, its purpose, and the reservation regarding Acevedo's deposition—"[t]his deposition will not preclude a later deposition during the *regular* discovery period"—make it abundantly clear that it is intended to allow Trustee to gather the limited evidence necessary to draft the notice letter. *Id.* (emphasis added). It is not an order for general discovery, and it does not control the requests for production.

---

[19] *Defendants' Response to the Plaintiff's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 108 ¶ 4.

[20] *Id.* ¶ 5.

[21] *Agreed Order Regarding Defendants' Motion to Abate*, Dkt. No. 85.

*B.*

*Rule 34(b)(2)(E)'s Two Options*

What, then, does "producing the documents" mean in this case? Rule 34(b)(2)(E) provides two options: produce them "as they are kept in the usual course of business or . . . organize and label them to correspond to the categories in the request." The unspoken assumption is that records "kept in the usual course of business" must be somewhat organized in order for the business to function. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 411 (S.D.N.Y. 2009). Thus either option would fulfill Rule 1's mandate that the rules "should be construed . . . by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Problems arise, however, in cases like the present case where a business is no longer functioning and the business records are placed in storage. Unfortunately, the phrase "in the usual course of business" is not defined in the Rules or the advisory notes, and there are no records of Congress debating the term. *Collins & Aikman*, 256 F.R.D. at 412 n.44. A leading opinion looked to dictionary definitions and the extensive legislative record of Evidence Rule 803(6)'s comparable "regularly conducted business activity." *Id.* at 412. That court concluded as follows:

> Where a producing party's activities are not "routine and repetitive" such as to require a well-organized record-keeping system—in other words when the records do not result from an "ordinary course of business"—the party must produce documents according to the sole remaining option under Rule 34: "organize[d] and label[ed] ... to correspond to the categories in the request."
>
> The logic of Rule 34 supports this limitation. When records do not result from "routine and repetitive" activity, there is no incentive to organize them in a predictable system. The purpose of the Rule is to facilitate production of records in a useful manner and to minimize discovery costs; thus it is reasonable to require litigants who do not create and/or maintain records in a "routine and repetitive" manner to organize the records in a usable fashion prior to producing them.

*Id.* at 412–13 (alterations in original). Courts agree that simply allowing access to a storage facility for inspection does not satisfy the usual course of business option. *See, e.g., Mizner Grand Condo.*

*Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010) (ruling that it is clearly the task of the producing party to examine, sort, number, and index bankers boxes in storage); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005) (ruling that when sent to storage, documents do not qualify as kept in the usual course of business and the only option remaining for the producing party is to "organize and label the documents to correspond to the document requests" (internal quotation and citation omitted)).

The rule is the same in this district. "[M]erely inviting [the requesting party] to come review documents [in storage] is not a sufficient response . . . . [The responding party] cannot simply open a warehouse door to a storage pile of unorganized documents." *Brown v. Bridges*, No. 3:12-cv-4947-P, 2014 WL 2210510, at *6 (N.D. Tex. May 27, 2014). Qualifying for the usual course of business option requires "something more than a bare, unsubstantiated statement"; instead, the responding party "must prove they have kept the documents in storage in the same manner as they were kept in the ordinary course of business, through testimony or some other evidence." *Id.* at *6–7. If the responding party fails to meet that burden, they "can only fulfill their obligation if they organize and label the documents to correspond with the document requests." *Id.* at *6.

Defendants have provided no evidence to the Court that the current manner of storage in a warehouse meets the usual course of business option. They have made only the bare assertion that "[t]he documents were produced in the manner in which they were kept." *Defendants' Response to the Trustee's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 108 ¶ 4. Accordingly, that option is foreclosed and it is reasonable that the rules require defendants to "organize and label [the documents] to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).

IV.

**Defendants' Alternative Request for a Protective Order**

Upon motion by a party, the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" resulting from the adverse party's discovery request. Fed. R. Civ. P. 26(c)(1). The Court has broad discretion to tailor the appropriate remedy, including, *inter alia*, forbidding the discovery's disclosure, limiting its scope, designating who may be present, and sealing depositions. *Id.* The "good cause" requirement "indicates that the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation and citation omitted). Courts that enter a protective order "solely on the basis of stereotyped and conclusory statements," without the substantiation of "particular and specific demonstration of fact" through affidavits or other evidence, abuse their discretion. *Id.* at 306–07 (internal quotation and citation omitted).

Defendants request, in the alternative, an in camera review of their tax returns and a protective order regarding any financial information. *Defendants' Response to the Trustee's Motion to Compel Defendants to Answer Discovery*, Dkt. No. 108 ¶¶ 14–15. Defendants also offer to produce bank statements "so long as the [d]efendants can redact information unrelated to ASI as well as any other confidential, sensitive, private, and unrelated financial information." *Id.* ¶ 23.

Defendants have not submitted affidavits or demonstrated any specific facts to meet their burden of good cause. It would be an abuse of this Court's discretion to grant the request without more than defendants' conclusory statements. Defendants have, however, presented a legal argument against the broad disclosure of tax returns. *Id.* ¶ 11 (citing *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985)). Federal policy suggests a tax return should be disclosed

only to the extent necessary to serve justice. 26 U.S.C. §§ 6103, 7213(a) (2010); *see Payne v. Howard*, 75 F.R.D. 465, 469–70 (D.D.C. 1977) ("[C]ourts have broadly construed these provisions to embody a general federal policy against indiscriminate disclosure of tax returns from whatever source."). It is therefore appropriate for the Court to limit the disclosure of defendants' tax returns to Trustee and attorneys for and retained experts of Trustee.

## V.

It is therefore ORDERED that:

(i) Trustee's motion to compel is hereby granted, subject to the limited disclosure of defendants' tax returns to Trustee and attorneys for and retained experts of Trustee;

(ii) defendants' General Objections are overruled;

(iii) defendants' objections based upon work product and attorney client privileges are overruled;

(iv) defendants' relevance objections are overruled;

(v) defendants' objections based on time and that production (or answers) are unduly burdensome are overruled;

(vi) defendants' trade secret, confidential, and tax return objections are overruled; and

(vii) defendants' legal conclusion and interrogatory objections are overruled. It is further

ORDERED that defendants shall, within fifteen days of the date of this order,

(i) answer the interrogatories served by Trustee and in a manner consistent with the Rules and this Memorandum Opinion and Order; and

(ii) produce the documents requested by Trustee and in a manner consistent with the Rules and this Memorandum Opinion and Order. It is further

ORDERED that the Court reserves consideration of the assessment of fees and expenses in favor of Trustee and against defendants from Trustee's motion to compel.

### End of Memorandum Opinion and Order ###