

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 8, 2016**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| ADKINS SUPPLY, INC., | § | Case No.: 11-10353-RLJ-7 |
| | § | |
| Debtor. | § | |
| _____ | § | _____ |
| | § | |
| KENT RIES, Trustee for the Estate of | § | |
| Adkins Supply, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 14-01000 |
| v. | § | |
| | § | |
| MARY L. ARDINGER, Individually and as | § | Civil Action No. 1:14-CV-095-C |
| Executrix of the ESTATE OF HORACE T. | § | |
| ARDINGER, JR., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendants, Mary Ardinger and the Horace T. Ardinger, Jr. Estate (through Mary Ardinger as Executrix), move for summary judgment on the affirmative causes of usury, fraudulent transfers, and common law fraud brought here by plaintiff Kent Ries, trustee of the Adkins Supply, Inc. estate (Trustee). The motion does not attack Trustee's objection to the Horace Ardinger Estate's proof of claim that is also a part of this adversary proceeding. Trustee filed his response opposing the motion.

By order of the District Court of January 7, 2015, on the Court's Report and Recommendation, the District Court directed the Court to retain all pretrial matters and, as to dispositive motions, to either decide the issues raised or hear the issues and submit proposed findings of fact and conclusions of law to the District Court. The Court, upon consideration of the defendants' motion for summary judgment, Trustee's response, the briefs of the parties, and the supporting materials, denies the motion.[1]

## **I.**

The affirmative claims here are as follows:

    (a)  statutory usury claim against Mary Ardinger;

    (b)  common law usury claims against both Mary Ardinger and the Horace Ardinger Estate;

    (c)  fraudulent transfer claims against Mary Ardinger and the Horace Ardinger Estate; and

    (d)  common law fraud claims against Mary Ardinger and the Horace Ardinger Estate.

Mary Ardinger submits that she is entitled to summary judgment on the claims made against her, particularly the statutory usury claim, because she was not in any way involved in the

---

[1] The Court has authority to so resolve the motion. *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014), and *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

transactions—she did not wire the funds to Adkins Supply, she did not receive the payments, and she made no material misrepresentations. As for the common law usury claims against both Mary Ardinger and the Horace Ardinger Estate, they both contend that they have not received "written notice stating in reasonable detail the nature and amount of the violation and an opportunity to cure the violation before filing suit." *Defendants' Brief in Support of Defendants' Motion for Summary Judgment* [Dkt. No. 95] ¶ 11. As a result, they argue that there is no usury violation and that Trustee has no standing to assert the usury claims. They also submit that this deprives the Court of jurisdiction.

Defendants next argue that the common law usury claims, along with the common law fraud claims and fraudulent transfer claims, are preempted by the Texas Finance Code § 305.007. Though this provision specifically addresses usury claims, the common law fraud and the fraudulent transfer claims are, according to defendants, "disguised usury causes of action" that relate "to the recovery of the usurious portion of the commissions paid to Horace Ardinger." *Id.* ¶ 19.

Mary Ardinger and the Horace Ardinger Estate submit that the wire advances were part of a "qualified commercial loan" under the Texas Finance Code that thereby allows "commissions" as "permitted, nonusurious additional charges." *Id.* ¶ 20. Related to this, they submit, is their ability to "spread" the interest payments so that they are "no longer usurious." *Id.* ¶ 21. How the concept of spreading is related to the characterization of the advances as part of a qualified commercial loan is unclear. They state as follows: "if the Trustee is alleging that the $4,242,554.00 was usurious, then those amounts should be first applied and spread against the 'principal' amount of $4,440,000 which was never repaid in whole or in part. Even after such spreading, Mr. Ardinger's estate would still be entitled to recovery of $197,446.00." *Id.*

Invoking the claim of Horace Ardinger (now the Horace Ardinger Estate) against Adkins Supply, as evidenced by the proof of claim filed in the Adkins Supply bankruptcy case, defendants

submit that by setoff, offset, and recoupment they defeat Trustee's affirmative claims against them. *Id*. ¶ 22.  The alleged claim of $4.4 million is greater than Trustee's alleged claim here of $4,242,554.00.  Applying the theories of setoff and/or recoupment satisfies any amount that is arguably usurious.  Similarly, both recoupment and setoff can be invoked to defeat the fraudulent transfer and common law fraud claims.

In a separate charge regarding the Trustee's fraudulent transfer claims, defendants reiterate that they are entitled to summary judgment as any charges were allowable commissions; are nonusurious after "spreading," and thus cannot be fraudulent transfers; are subject to setoff and recoupment; and, as to Mary Ardinger, she was not a "transferee."  *Id*. ¶ 30.  They then raise defenses that Adkins Supply received reasonably equivalent value for the transfers, that Horace Ardinger gave new value after the transfers were made, and that the transfers were made in the ordinary course of business.  *Id*.

As for the common law fraud claims, defendants submit that Adkins Supply did not justifiably rely on any misrepresentations because any alleged actionable misrepresentations concern a "point of law" upon which reliance can never be justified.  *Id*. ¶¶ 33, 35.

## II.

Defendants did not submit summary judgment evidence in support of their motion.  Despite this, their brief states, and correctly so, that

> [s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

*Id*. ¶ 8.  They then note that a motion for summary judgment that depends on the pleadings and the exhibits serves as a Rule 12(c) motion for judgment on the pleadings.[2]  *Id*. ¶ 9.

---

[2] Rule 12(c) of the Federal Rules of Civil Procedure is applicable to adversary proceedings under Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## A.

Defendants are entitled to summary judgment if they either negate an essential element of each of Trustee's claims, which they do with summary judgment evidence, or by alleging and establishing that Trustee has no evidence to support his claims. *Foster v. Deutsche Bank Nat'l Trust Co.*, No. 4:14-CV-436-Y, 2016 WL 695658, at *1 (N.D. Tex. Feb. 22, 2016). Defendants' motion is not cognizable under the first method as they have not offered any summary judgment evidence. And they have not asserted summary judgment under the second method. Defendants' brief simply alleges facts that are different from Trustee's alleged facts. Defendants have wholly failed to show that there are no genuine issues of material fact, including the following that are alleged by Trustee:

- Defendants advanced funds several hundred times to Adkins Supply over the four years prior to the petition date. The advances totaled over $44,500,000; in return, Adkins Supply paid defendants $45,600,000, plus over $4,200,000 in "commissions." Dkt. No. 43 ¶ 4.01.

- Horace and Mary Ardinger were married for seventeen years prior to Horace's death in 2012. *Id.* ¶ 5.03. The couple had been doing business with Robert L. Adkins, principal of Adkins Supply, since 2003. *Id.* ¶ 5.01. Mary was a community property owner in their business and "active participant in their business dealings, including their business dealings with [Adkins Supply]." *Id.* ¶ 5.04.

- There are two non-party, co-conspirator Ardinger-related entities that were beneficiaries of these transactions. *Id.* ¶ 5.05.

- Horace Ardinger and Adkins spoke on the phone almost every day. "The Defendants characterized the loans to [Adkins Supply] as an investment in pipe and oil field inventory and/or equipment for which Defendants were to be paid a 2% to 3% commission within a few days of the advances." *Id.* ¶ 5.06.

- Part of defendants' scheme was to call the return above principal a "commission" or "profit" from an "investment," yet none of these transactions were reduced to writing and the defendants cannot identify anything they actually invested in. *Id.* ¶¶ 5.07–5.08.

- The lack of documentation was at the insistence of Horace Ardinger so he could label the transactions in the manner most beneficial to him. Horace Ardinger specifically requested that Adkins stop sending documents like joint operating agreements and refused to execute any documents he received. *Id.* ¶ 5.11.

- The Ardingers held a dominant economic position over Adkins, which they exploited. *Id.* ¶ 5.12.

- Horace Ardinger described the relationship as "*we* were helping (him) out with the banking." *Id*. ¶ 5.13 (emphasis added).

- Both the Ardingers acknowledged Mary's involvement in the enterprise.  Horace Ardinger testified that Mary was the only other person who could and did issue wires to Adkins Supply and that Mary was fully informed on all the deals.  Mary testified that she worked with her husband on these deals.  *Id*. ¶ 6.01.

- Part of the scheme was to invest fractional interests in Adkins's wells and to not record them or allow any of the terms to be reduced to writing.  *Id*. ¶ 6.02.

- Defendants "artificially calculated interest rates by the use of computation tricks and balances alleged due" to induce Adkins to pay interest at unlawful rates.  *Id*. ¶ 8.02.

- Defendants computed, charged, and collected Adkins Supply's interest using a three- to five-day term factor and characterized the interest on the circular and revolving advances as commissions.  *Id*. ¶ 8.04.

- Defendants "used computation tricks and imaginary rates of interest . . . to artificially increase the balance alleged due and disguise usurious rates."  *Id*. ¶ 8.05.

- Defendants termed these charges "commissions" as a device to avoid usury laws.  *Id*. ¶ 8.13.

- There was no agreed specific rate of interest.  In such a case, 6% is the maximum rate and is imposed on the agreement as a matter of law.  *Id*. ¶ 8.14.  During this time, defendants represented to Adkins Supply "that the rate charged was based on or tied to a commission rate that was lawful."  *Id*. ¶ 8.15.  The failure by defendants to disclose the true rate charged is a fraudulent scheme, as is the characterization of interest as a commission.  *Id*. ¶ 8.16.

- Additional sums over and above the original balance of the loan have been charged by (1) use of computation tricks; (2) the characterization of interest as a commission; and (3) the use of Adkins Supply's money without properly crediting Adkins Supply's account— creating an artificially inflated balance of claimed principal.  *Id*. ¶ 8.22.

- Horace Ardinger and Robert L. Adkins "had a close personal relationship," which Horace Ardinger used to exert control over Adkins Supply by refusing documentation for extremely large financial transactions in order to cover up the usurious interest and enormous profits.  *Id*. ¶ 9.04.

- Defendants knowingly and falsely represented to Adkins Supply that the charges were lawful commissions, made with the intent to induce Adkins Supply to agree to this lending arrangement.  Adkins Supply relied on these representations to its detriment ($4,000,000 in excessive interest) and had no reason to doubt them.  *Id*. ¶ 10.01.

## B.

Even if the motion here is construed as a no-evidence summary judgment motion, Trustee has made a sufficient showing beyond the complaint to defeat defendants' motion.[3] Besides, it would be unfair to entertain a no-evidence summary judgment motion given defendants' efforts to block Trustee's discovery. *See Memorandum Opinion and Order* [Dkt. No. 116].

Treating the motion as a Rule 12(c) motion for judgment on the pleadings is also unavailing. The standard for such motion is the same as that for a Rule 12(b)(6) motion. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."). Defendants have previously submitted a Rule 12(b)(6) motion to dismiss which the Court denied. *See Order* [Dkt. No. 86]. Defendants do not deserve a second bite at the apple.

## C.

Defendants' legal theories of setoff and recoupment are premised upon a valid claim back against the debtor, Adkins Supply. Trustee objects to the claim, however. The burden of going forward thus rests with the defendants. *eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 317–18 (S.D. Tex. 2007) (shifting burden to creditor to prove claim's validity following objection by debtor to claim that is lacking supporting information required under Rule 3001(c)). Defendants cannot assume its validity and then use it as a basis for summary judgment here. And to reiterate, defendants presented no evidence of facts to support these theories.

---

[3] Trustee referred to numerous items from the record in response to the motion. *See Plaintiff's Response to Defendants' Motion for Summary Judgment*, Dkt. No. 97 ¶¶ 7, 13 (incorporating *Appendix in Support of Plaintiff's Response in Opposition to Defendants' Motions to Dismiss* [Dkt. No. 29], which includes the depositions of Horace Ardinger, Robert James Widmer, Jr., Mary Ardinger, and Paula Acevedo; wire transfer documents; the adversary complaint and exhibits in *Morton v. Ardinger*, Adv. No 13-01005; webpage printouts; a usury notice letter; stipulations for extension of time; and a transcript of proceedings in the *R.L. Adkins Corp.* bankruptcy, Case No. 11-10241); *Id.* ¶¶ 9, 32 (referencing Trustee's affidavit [Dkt. No. 98], which includes the attached pleadings from the probate proceeding of Horace Ardinger, including probate of will application, will, proof of death, order probating will, etc); *Id.* ¶ 15 (referencing stipulation and notice letter in main bankruptcy case [Case No. 11-10353, Dkt. Nos. 102, 108, and 128]).

The Court disagrees with defendants' argument that the Texas Finance Code preempts the claims here.  *See C&K Invs. v. Fiesta Grp., Inc.*, 248 S.W.3d 234, 254 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("A plain reading of the section reveals that only common law 'penalties' are barred, not common law claims for actual damages").  This was rejected by the Court's prior order denying defendants' prior motion to dismiss.

Defendants' argument regarding the effect of "spreading" the alleged interest is unclear, unsupported by evidence, and is in the nature of an affirmative defense for which defendants have the burden.  The motion fails here, as well.

### III.

It is, therefore,

ORDERED that defendants' motion for summary judgment is denied.

### End of Memorandum Opinion and Order ###